WELCH, J.
laThe defendant/appellant, Sunbelt. Innovative Plastics, L.L.C. (“defendant”), appeals a judgment from the office of workers’ compensation awarding the plaintiff/appellee, Raymond Namias, Jr. (“plaintiff’), indemnity, benefits, medical benefits, penalties and attorney fees. For reasons that follow, the judgment of the workers’ compensation judge (“WCJ”) is vacated in part, affirmed in part, amended in part and remanded for further proceedings consistent with this opinion.
FACTUAL AND PROCEDURAL HISTORY
The- plaintiff filed a disputed claim for compensation with the -office of workers’ *749 compensation on August 4, 2014, in connection with a July 21, 2014 work-related accident. The plaintiff asserts that he suffered injuries to his right hand/wrist, right shoulder, and back'-when a part of an engine he was unbolting slid back- and trapped his right hand. On ■ August 31, 2014, several weeks after filing his disputed claim for compensation, the plaintiff fell down stairs at his home and fractured his left ankle and calcaneal. The plaintiff at-' tributes the injuries suffered on August 31, 2014- to the July 21, 2014 work-related accident and sought penalties and attorney fees for the defendant’s failure to timely pay benefits. The defendant maintains that the plaintiff is not entitled to compensation for either incident. ..
The matter proceeded to trial on March S, 2015. At trial, the plaintiff testified that on July 21, 2014, he sustained injuriés to his right hand, right shoulder and lower back. According to the plaintiff, part of an engine he was- unbolting slid back, causing a crushing injury to his right hand. The plaintiff testified that when he pulléd his arm back to free his hand, he experienced a popping sensation-in his right shoulder and back. It is undisputed that there were no witnesses to the plaintiff’s accident. However, the plaintiff testified that he recounted the incident to his co-worker, Fred Porter, whom he encountered shortly thereafter. The plaintiff contends that Mr. Porter also witnessed him having difficulty moving alsladder immediately following the accident due to pain in his right hand and back. We note that Mr. Porter was present at the trial, but neither party called him to testify.
The plaintiff testified that- he did not immediately report his injuries on -July 2Í, 2014, because he could not locate his supervisor and the front office had -closed for the day. Slidell Memorial Hospital-emergency room records dated" July 21, 2014, evidence that the plaintiff sought treatment for only an injury to his right thumb sustained as the result of-a work-related accident. The emergency-room records provide that the plaintiff was diagnosed with a sprained right thumb, after x-rays of his right hand revealed no fractures.
The plaintiff ’ testified that he experienced soreness in his back, shoulder and hand the morning following the accident. The plaintiff testified that he called work the" next morning and was asked by the plant superintendent, referenced in the record ’only as “Doug,” to come in to work. The plaintiff testified that he participated in a :meeting with Doug, Mr. Porter, and Marty Johnson, the plaintiffs immediate supervisor. The plaintiff states that Doug filled out a handwritten accident report, and asked the plaintiff to see a doctor at a local urgent care facility that day. The plaintiff testified that he reported to the urgent care facility, but left prior to being seen-by a -doctor after a two-hour wait, because the person providing him transportation had a pending work obligation.
With regard to the August 31, 2014 fall at his home, the plaintiff testified at trial, “I fell down the steps at my house from my leg going completely numb on me.” The plaintiff testified that at the-time of the accident, approximately 4:00 p.m., he was going downstairs “to go eat dinner.” The plaintiff testified that he had- not worked'since the July 21, 2014 accident, and is currently waiting to have surgery to repair his left ankle, which was delayed by his physician due to swelling.
|4The plaintiffs immediate supervisor, Mr. Johnson, also testified at trial. Mr. Johnson’s testimony regarding the events surrounding the accident and filling out of the accident report conflicts with: the plaintiffs account. Mr. Johnson testified that he- had seen the plaintiff at the end of the day- on July 21, 2014, and that the plaintiff *750 failed to report the accident at that time. Mr. Johnson’s testimony did not specify an identifiable time when this encounter occurred. Mr. Johnson further testified, that he did not recall a meeting involving the plaintiff, Doug, and Mr. Porter on July 22, 2014. Instead, Mr. Johnson testified he met with the plaintiff alone to fill out an accident report. . According to Mr. Johnson, the plaintiff initially told him that a pulley fell on his hand and that his thumb was fractured. Mr. Johnson testified that the plaintiff did not mention injuries to his shoulder or back during their meeting, but was wearing .a brace on his right hand. Mr. Johnson testified that he turned the completed accident report into the office, but., he, had -no knowledge of what action was taken by the .office in response to the accident report, nor did he know the current whereabouts of said report. The accident report was not. offered or admitted into the record herein.
The third and final witness at trial was Gary Kern, si- claims consultant for the defendant’s insurer. Mr. Kern testified that on August 1, 2014, he was asked to investigate the July 21,2014 accident. Mr. Kern testified that his- records indicated that the plaintiff had been told on the day of the accident, that he was not making satisfactory progress in-his job, and that his last day would be the upcoming Friday. Mr. Kern admitted that he never asked for nor received a copy of the -accident report filled out on July 22, 2014. ■
Mr. Kern testified that his investigation included meeting -with Doug, ‘Mr. Porter, and Mr. Johnson, inspecting and photographing a motor similar to the one the plaintiff claimed was involved in the accident, referring the plaintiff for a second medical opinion from Dr. Gordon Nutik, and, unsuccessfully attempting, to.|Hset up an interview with the plaintiff. Mr. Kern’s testimony indicates that he focused on trying to “understand” how the plaintiff had fractured his thumb, because there was.no medical evidence to support such a claim. Mr. Kern could not recall receiving or reviewing .reguests- for benefits and the attached medical reports forwarded to the defendant by counsel for the plaintiff in early August of 2014, Mr. Kern’s testimony suggests that, he never investigated the plaintiffs claims regarding. his back or shoulder injuries. ...
The plaintiffs medical records were also introduced into evidence at the trial. These records indicate that after receiving treatment at the emergency room on July 21, 2014, for a sprained right thumb, the plaintiff later sought treatment for injuries to his right shoulder, and lower back. On July -28, 2014, the plaintiff sought a chiropractic evaluation, by Dr. Phillip O. Gordon, -Jr. The plaintiff reported right wrist/ hand pain and low back pain with spasm, radiating pain in his left lower extremity, and numbness in hie left foot as well as weakness in his right and left lower extremities. Dr. Gordon placed the plaintiff on temporary total disability status-(TTD) for four weeks. Dr. Gordon diagnosed the plaintiff, with lumbar sprain/strain and a contusion to the right wrist/hand with resolving ecchymosis. - Dr. Gordon further opined that based on the patient history provided, the plaintiffs past medical history and injury mechanisms, it was more probable than not that -the plaintiffs lumbar and .right hand/wrist injuries, were causally related to the-work-related accident on July 21,2014.
. On- August 2, 2014, the plaintiff was examined by Dr. Kenneth Williams, a phy-siatrist, in the same; practice as Dr. Gordon. The plaintiff presented . to Dr. Williams with complaints of constant pain in his right h.and/wrist, right shoulder, and lumbar area; however, there is no record of complaints ;.of numbness or weakness in *751 his lower extremities. This is «'the first subjective report of shoulder pain in the plaintiffs medical records. Dr. Williams’s impressions were that the | ^plaintiff was suffering from a lumbar strain/sprain, right hand/wrist impingement, right shoulder impingement, and myospasm. Dr. Williams found it more probable .than not that the plaintiffs lumbar, right hand/ wrist, right shoulder injuries were causally related to the .work-related accident on July 21, 2014. The-billing records indicate that plaintiff reported to Drs. Williams’s and Gordon’s ■ clinic twice for therapy on July 28,. 2014 and August 2, -2014.
As noted above, on August 31, 2014, the plaintiff fractured his ankle and calcaneal as the result of falling down stairs at his home. Emergency room records for Sli-dell Memorial Hospital contain two reported accounts of the August 31, 2014 incident by the plaintiff. The plaintiff reported to the nurse that he “tripped off some steps while working outside.” Further, the plaintiff reported to the physician that “he was coming down some stairs [and] trying to avoid a falling limb — reports he tumbled down stairs.” However, on September 7, 2014, the plaintiff reported to Dr. Nicola S. Corbett, an orthopedic surgeon, that “the fall happened because his left leg was going numb and giving out due to a back injury he sustained at work.” Dr. Corbett does not express an opinion in her report as to whether the August 31, 2014 fall was related to injuries sustained on July 21, 2014. On November 25, 2014, Dr. Corbett recommended a subtalar arthrodesis, but informed the patient that she could' not pérform the surgery until the plaintiff was nicotine free for a month.
With the approval of the defendant, the plaintiff underwent MRIs on his lumbar spine and right fingers on October 17, 2014. Dr. Lawrence Glorioso, III, interpreted the images to evidence internal disruption, and -bulging‘at L3, L4 and L5 intervertebal disc, and opined that the findings at L4 and L5 indicated a pain generating source.- Additionally, Dr. Glo-rioso’s report noted lumbar facet arthrosis without critical ossesous.lateral recess or neural foraminal, and.,straightening of the lumbar lordosis with a possible component of muscle spasm. The defendant filed |7into evidence the records of orthopedist, Dr. Gordon P. Nutik, who examined the plaintiff on October 21, 2014 at the request of the defendant. Dr. Nutik’s report states that his review of the’'plaintiff’s lumbar MRI did not’ show any -significant underlying disc herniations or evidence for nerVe root compression, and he recommended an independent reading of the lumbar MRI by another-physician. Based on his reading of the MR-I, Dr. Nutik opined that he would be unable, to . explain a neurological basis - for the reported numbness in the plaintiff’s lower left extremity. Dr. Nutik. opined that the:plaintiff sustained a soft-tissue contusion about the right hand and wrist as a result of the work-related incident, but he “would not be able to explain a significant associated shoulder or lower back injury” Dr. Nutik concluded, “I would have difficulty relating this patient’s fall, which he states occurred two weeks afterwards because of the numbness in his lower left extremity, to the initial injury from 7/21/14.” ¡
•In a judgment signed .May 14, 2015, the WCJ rendered judgment in favor of the plaintiff. First, the WCJ found that the plaintiff had proven, by a preponderance, of the evidence that an accident occurred on July 21,2014, arising out of the course and scope of his employment, and that the plaintiffs subsequent fall on August 31, 2014, was an expected consequence of the July 21, 2014 accident. Second, the WCJ found that the plaintiff had proven by a preponderance of the evidence that both accidents had a causal relationship to the *752 plaintiffs disability. • Third, the WCJ found that the plaintiff met his burden under La. R.S. 23:1221(T)(c) of proving by clear and convincing evidence that he was entitled to TTD benefits from July 22, 2014 forward. Fourth, the WCJ held that the plaintiff was entitled to recovery of medical benefits and expenses related to the injuries sustained on July 21, 2014 and August 31, 2014. Additionally, the WCJ found that the plaintiff was entitled to see his choice of an orthopedic surgeon, and ordered the defendant to pay for an ankle fusion surgery on the plaintiffs left ankle. Fifth, lathe WCJ awarded the plaintiff attorney fees and penalties for failure to timely pay indemnity benefits under La. R.S.- 23:1201(B), as well as for failure to authorize and/or pay medical benefits pursuant to La. R.S. 23:1201(E). Finally, the WCJ assessed all costs associated'with the proceedings, including depositions in the record, against the defendant. All awards made by the WCJ included an award of legal interest until paid.
, The defendant filed the instant appeal challenging the May 14, 2015 judgment. On appeal, the defendant contends the WCJ erred in three respects: (i) finding that the plaintiff suffered a work “accident” on July 2i, 2014, pursuant to La. R.S. 23:1021; (ii) awarding the plaintiff indemnity and benefits based on the finding that the plaintiff was injured in the July 21, 2014 work accident; and (iii) awarding penalties and attorney fees to the plaintiff for failure to pay workers’ compensation benefits and medical costs and expenses.[1] The plaintiff has filed an answer to the appeal seeking additional attorney fees incurred as a result of this appeal.
STANDARD OF REVIEW
In a workers’ compensation case, as in other cases, the appellate court’s review of factual findings is governed by the manifest error or clearly wrong standard'. Prine v. Coastal Bridge Co., L.L.C., 2013-1630 (La.App. 1st Cir.10/29/14), 157 So.3d 732, 738, citing Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Kennedy v. Security Industrial Insurance Company, 623 So.2d 174, 175 (La.App. 1st Cir.), writ denied, 629 So.2d 389 (La.1993). The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial , court; and 2) whether the record establishes that, the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). An lflappellate court may not set aside a trial court’s factual finding unless, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. Stobart v. State, through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993).
LAW AND DISCUSSION
I. Accident, Injury & Disability
The Workers’ Compensation Act provides coverage to a worker for personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). A worker must prove the chain of causation required by the workers’ compensation statutory scheme. He must establish by a preponderance of the evidence that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. Hirstius v. Tropicare Service, LLC, 2011-1080 (La.App. 1st Cir.12/21/11), 80 So.3d 1215, *753 1216; Magee v. Abek, Inc., 2004-2554 (La. App. 1st Cir.4/28/06), 934 So.2d, 800, 806, writ denied, 2006-1876 (La.10/27/06), 939 So.2d 1287. While the workers’ compensation laws -are to be construed liberally in favor of, the worker, that interpretation cannot lessen- the worker’s burden. Bailey v. Smelser Oil & Gas, Inc.,, 620 So.2d 277, 279-280 (La.1993).
An accident is defined in La. R.S. 23:1021(1) as follows:
“Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective, findings of an injury which is more than simply a gradual, deterioration or progressive degeneration.
A worker’s work-related accident is presumed to have caused his disability when the worker proves that before the accident, he had not manifested his disabling symptoms; that commencing with the accident, disabling symptoms appeared; and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection .between the accident and the disabling condition, Delatte v. Pala Group, LLC, 2009-0913 (La.App. 1st Cir.2/10/10), 35 So.3d 291, 295, writ denied, 2010-0562 (La.5/7/10), 34 So.3d 865.
A worker’s testimony alone may be sufficient to discharge his burden of proving an accident, provided two elements áre satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Prine, 157 So.3d at 739, citing Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). Corroboration of the worker’s testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Bruno, 593 So.2d at 361. Barring circumstances that cast suspicion on the reliability of the worker’s uncontradieted testimony, the WCJ should accept the testimony as true when determining whether the worker has discharged his burden.- Brown v. Kwok Wong, 2001-2525 (La.App. 1st Cir.12/20/02), 836 So.2d 315, 319. However, in instances where the evidence leaves the probabilities of causation equally balanced, the worker has failed to carry his burden of proof. Magee, 934 So.2d at 807. Whether a worker has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the workers’ compensation judge. Harrison v. Baldmn Motors, 2003-2682 (La. App. 1st Cir.11/3/04), 889 So.2d 313, 316, writ denied 2005-0249 (La.4/1/05), 897 So.2d 609. ...
Under certain circumstances an aggravation of an injury initially sustained at work is regarded as compensable, obligating the employer to continue paying compensation benefits, even though the aggravation develops away from the premises, and when the claimant is no longer employed by the employer. Buxton v. Iowa Police Department, 2009-0520 (La.10/20/09), 23 So.3d 275, 283-284. The general rule is that recovery is available for all natural consequences that flow from the primary injury absent an independent intervening cause. Id. at 284. The |ltkey inquiry is the relationship between the second injury and the initial, work-related injury. Id. at 284.
• The defendant contends that the plaintiff failed to meet his burden of proof to demonstrate by a preponderance of the evidence that: (1) he sustained injuries to his shoulder and lower back as a result of the July 21, 2014 accident; (2) the July 21, 2014 accident resulted in disability;- and *754 (3) the August 31, 2014 fall at his home was causally related to injuries sustained in the July 21, 2014 accident. The defendant avers-that the contradictory evidence herein leaves the probabilities of causation evenly balanced and results in the plaintiffs failure to. carry his burden of proof.
We cannot say that the WCJ’s finding that the plaintiff sustained injuries to his right wrist/hand, lower back, and right shoulder as a result of the July 21, 2014 accident was unsupported by the record, and, thus, manifestly erroneous. The evidence demonstrates that the plaintiff reported to the emergency roctin shortly after "leaving work on July 21, 2014,' and informed the medical staff' that he had suffered a work-related injury to his right thumb. Further, the reports of Drs. Williams and Gordon indicate they each diagnosed the plaintiff with right wrist/ hand, right shoulder, and lower back injuries, and attributed said injuries to the work-related accident. This evidence can be found to reasonably corroborate the plaintiffs account of the unwitnessed July 21,2014 accident.
The fact that the plaintiff did not immediately complain of back and shoulder pain at the emergency room on July 21, 2014, does not automatically render the plaintiffs later complaints impossible. See Middleton v. International Maintenance, 95-0238 . (La.App. 1st Cir.10/6/95), 671 So.2d 420, 424, writ denied, 95-2682 (La.1/12/96), 667 So.2d 523. The defendant’s reliance upon Mr. Johnson’s testimony that the plaintiff reported no accident or injury when he saw him “at the end of the day” does not cast serious doubt on the plaintiffs account of 112the accident, as Mr. Johnson was nonspecific as to the time and details of the encounter in his testimony. As such, we’affirm the WCJ’s finding that a work-related accident occurred on July 21, 2014, and resulted in injuries to the plaintiffs right shoulder, right hand/wríst, and lúmbar spine.
However, we disagree with the WGJ’s finding that the plaintiff established by a preponderance of the' evidence a causal connection between his left ankle and calcaneal injuries sustained on August 31, 2014 and the work-related accident on July 21, 2014. Other than the plaintiffs testimony at trial and a self-report of the incident to Dr. Corbett, the record herein reveals no medical evidence, witness testimony, or other documentary evidence to corroborate the plaintiffs assertion that the fall down the steps was caused by left leg numbness or leg weakness related to the lower back'injuries sustained on July 21, 2014. The conclusion of the WCJ was based entirely upon' the representations of the plaintiff, whom the WCJ found credible.
Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Stobart, 617 So.2d at 882; Marange v. Custom Metal Fabricators, Inc., 2011-2678 (La.7/2/12), 93 So.3d 1253, 1259. Here, the plaintiffs account of the August 31, 2014 fall is contradicted by the medical records and the plaintiffs own inconsistent statements. First, emergency room records from August 31, 2014, state that the plaintiff was. negative for “numbness,” and the physician’s review of systems included the plaintiffs back -and found that |13the plaintiff was “[negative for acute changes, decreased range of motion, injury or acute deformity, pain .at *755 rest, pain with movement, radiated pain.”[2]
Second, the plaintiffs own accounts of how the August 31, 2014 fall occurréd are contradictory and fail to corroborate his claims. On one hand, when the plaintiff initially sought treatment in the emergency room, he reported to his health care providers that he “tripped off steps while working outside” and additionally that he fell down the stairs while attempting to avoid a failing limb. On the other hand, on September 7, 2014,' the plaintiff reported to Dr. Corbett that the fall was caused by left leg numbness caused by the July 21, 2014 work-related accident, and testified to this version at trial. Further, at trial, the plaintiff testified that he. had done “nothing” all .day .and that when .the fall occurred he was going downstairs to “eat dinner.” . _ ,
The plaintiffs contradicting and uncorroborated self-reported accounts regarding the events surrounding the August 31, 2014 fall fail to substantiate his claims‘of a causal connection between injuries* sustained in the July 21,- 2014 work-related ‘ accident and the August 31, 2014 fall. Based on our review of the-record as- a whole, we find the WCJ’s determination that the plaintiff met his burden to demonstrate a causal connection between the July 21, 2014 work-related accident and the August 31, 2014 fall to be unreasonable and manifestly erroneous.. We vacate those portions of the judgment holding that the plaintiff established a causa,] relationship sufficient to prove that the August 31, 2014 fall, and the injuries associated therewith were an expected consequence of the injuries sustained as a result of the July 21,2014 work-related .accident.
| uEntitlement to Indemnity and Benefits
Next, we consider the defendant’s contention that the WCJ erred in finding that the plaintiff was entitled to indemnity ahd medical benefits. ’’ '
Temporary Total Disability
A worker seeking to recover indemnity benefits for, a TTD must prove by clear and convincing evidence that he. is physically unable to engage, in any gainful occupation, whether or not the same type of work he was engaged in at the, time of the injury. LSA-R.S. 23:1221(1)(c), see also Magee, 934 So¡2d at 807. The claimant must provide objective, expert testimony as to his medical condition, symptoms, pain, and treatment, in addition to personal testimony, in order to meet this standard. Roussell v. St. Tammany Parish School Board, 2004-2622 (La.App. 1st Cir.8/23/06), 943 So.2d 449, 457. In the absence of clear and convincing evidence that the employee is physically unable to engage in any employment, the claimant’s demand for temporary total disability benefits must fail. Id. at 457
The WCJ awarded the plaintiff TTD benefits in the amount of $300.00 per week from July 22, 2014.[3] The plaintiff submitted medical evidence of being placed on TTD status on July 28, 2014 by Dr. Gordon for a-period of four weeks. Dr. Gordon’s records indicate that he would re-examine the patient on August 28, 2014, to- determine future work status; however, the record does not indicate that this reexamination occurred. While the August 31, 2014 fall renders review of this matter more complicated, it is incumbent on the *756 worker to support his claims for disability with objective medical evidence of the disabling condition causing the worker’s inability to engage in any employment. Our finding that there is no evidence to support a causal connection between the August 31, 2014 fall and, the July 21, 2014 accident constrains us to find that any disability arising after the August 31, 2014 fall is not coinpensable' under workers’ compensation. Further, 115we can-find no objective evidence in the record to indicate that the plaintiff returnéd to Dr. Gordon; or any other health care provider, for a reassessment of his work status in connection with his right hand/wrist, lower back, or right shoulder complaints after August 28, 2014. As such, we find that the WCJ erred in awarding TTD benefits to the plaintiff after August 28, 2014, and we vacate' that portion of the WCJ’s judgment in so far as it awards the plaintiff TTD benefits after August 28, 2014. We remand this matter to the WJC to assess the plaintiffs TTD benefits related to the July 21, 2014 accident consistent with this opinion.
Medical Expenses
Louisiana Revised Statutes 23:1203(A) obligates the employer of an injured worker to furnish “all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.” To recover medical, expenses authorized under La. R.S. 23:1203, the claimant must prove by a preponderance of the , evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Roussell, 943 So.2d at 460. An award of medical expenses must be limited to those expenses shown to have been made necessary by the work-related accident. Id. at 460.
Here, the WCJ awarded. the plaintiff medical expenses related to both the July 21, 2014 work-related accident and the August 31, 2014 fall. The WCJ’s judgment included- an order that the defendant pay for the plaintiff to undergo the ankle surgery recommended by Dr. Corbett as’ well as all future reasonable and necessary medical treatment and expenses. Based on our finding that the WCJ erred in finding that the August 31, 2014 fall was an expected consequence of the July 21, 2014 accident, we vacate that portion of the judgment awarding the plaintiff all past and future medical expenses arising out of the August 31, 2014 fall, including the 'WCJ’s order’that the defendant pay for the ankle fusion on the 116plaintiffs left ankle. The record is unclear' as to whether the plaintiffs right hand/wrist, lower back, and right shoulder injuries áre resolved. ' Therefore, we affirm that portion of the judgment entitling the plaintiff to and ordering the defendant to pay for any past and future reasonable and necessary medical treatment and attendant expenses, incurred in connection with the plaintiffs right 'hand/wrist, lower back, and right shoulder injuries sustained in the July 21, 2014 work-related accident, and we remand to the WCJ to assess, medical benefits consistent with this opinion.
. Penalties and Attorney Fees
Louisiana Revised Statutes 23:1201 establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted' or such nonpayment results from conditions over which the employer or insurer had no control. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890. To determine whether the worker’s right to benefits has' been reasonably controverted, thereby .precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether *757 the employer, or its insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the - claimant throughout the time the- employer or insurer refused to pay all or part of the benefits allegedly owed. Id, at 890.
It is undisputed that'‘the-defendant has failed to pay any indemnity or medical benefits for the plaintiff since, his accident on July 21, 2014. The defendant contends that the plaintiffs failure to report his back and shoulder injuries to health care providers in the emergency room or to Mr. Johnson the following day, coupled with the investigative results of Mr. Kern, reasonably controverts the plaintiffs claim. We find no manifest error in the WCJ’s finding that the plaintiff is entitled to penalties and attorney fees in so far as it relates to the Inpayment of indemnity and medical benefits related to the July 21, 2014 work-related accident. The record contains sufficient evidence to support the WCJ’s finding, including evidence that the plaintiff forwarded to the defendants Dr. Gordon’s finding of TTD on August 1, 2014, Dr. Gordon’s full report on August 4, 2014, and Dr. Williams’s report on August 5, 2014. Further, Mr. Kern’s testimony establishes that he did not recall receiving or considering these .reports in the course of -his investigation, but,- instead, focused only on the thumb injury. The award of penalties as - it relates to indemnity benefits for the July 21,. 2014 accident-in the judgment is to be modified to reflect our finding that the plaintiff is entitled to TTD benefits from July . 22, 2014 to August 28, 2014.
However, we find the WCJ erred in awarding attorney fees and penalties in connection with the denial of indemnity benefits and medical benefits associated with the August 31, 2014 fall. .We vacate that portion of the judgment awarding attorney fees and penalties associated with the denial of indemnity benefits and medical benefits in connection with the August 31,2014 fall.[4]
We observe that the WCJ awarded attorney fees for failure to pay indemnity and medical benefits in two lump sums: $10,500.00 fpr the defendant’s failure timely pay indemnity benefits, and $12,500.00 for the defendant’s failure to timely pay medical benefits. ■ The record contains no evidence to suggest how the attorney fee awards were calculated, but presumably the WCJ considered the denial of indemnity and medical benefits associated with the August 31, 2014 fall in its calculation. Based on the above findings, wé remand this matter to the WCJ for recalculation of penalties and reasonable attorney fees consistent with this opinion.
Answer to Appeal
Finally, the plaintiff has answered the appeal and requested additional attorney fees for the work necessitated by the appeal. Additional attorney fees are |isusually awarded on appeal when a party appeals, obtains no relief,'and the appeal has necessitated additional work on the opposing party’s counsel, provided that the opposing party appropriately requests an increase. Quick v. Terrebonne General Medical Center, 2009-1101 (La.App. 1st Cir.2/10/10), 35 So.3d 287, 290-291. Here, the defendant has obtained relief from the appeal; therefore, we do not award additional attorney fees to the plaintiff for this appeal.
*758 CONCLUSION
For the above reasons, we find as follows with respect to the WCJ’s May 14, 2014 judgment. We affirm the WCJ’s finding that a work-related accident occurred on July 21, 2014, and resulted in injuries to the. plaintiffs right shoulder, right hand/wrist, and lumbar spine. We vacate those portions of the judgment holding the plaintiffs injuries sustained as a result of the August 31, 2014 fall were an expected consequence of the injuries sustained as a result of the July 21, '2014 work-related accident. We amend the award of TTD benefits to the plaintiff to' limit plaintiffs TTD benefits to the period of July 22, 2014 to August 28, 2014. We vacate that portion of the judgment awarding the plaintiff all past and future medical expenses arising out of the August 31, 2014 fall, including the order that the defendant pay for the ankle fusion on the plaintiffs left ankle. We affirm that portion of the judgment entitling the plaintiff to and ordering the defendant to pay for any past and future reasonable and necessary medical treatment and attendant expenses, incurred in connection with the plaintiffs right hand/wrist, lower back, and right shoulder injuries sustained in the July 21, 2014 work-related accident.. We affirm that portion of the judgment awarding the plaintiff attorney fees and penalties for the failure to timely pay indemnity benefits and medical benefits associated with the July 21, 2014 work-related accident. We vacate that portion of the judgment awarding attorney fees and penalties associated with the denial of indemnity benefits and medical benefits in connection with the August 31, 2014 |1flfall. We remand this matter to the WCJ for recalculation of reasonable attorney fee awards for the failure to timely pay indemnity benefits and medical benefits in keeping with the findings of this opinion. Further, on remand, the WCJ is ordered to assess TTD benefits, indemnity benefits, and medical benefits consistent with this opinion. Finally, we deny the plaintiffs request for additional attorney fees for this appeal. In all other respects, we affirm the May 14, 2014 judgment. All costs of this appeal are to be split equally between the parties, Raymond Namias, Jr. and Sunbelt Innovative Plastics, L.L.C.
AFFIRMED IN PART, VACATED IN PART, AMENDED IN PART, AND REMANDED WITH INSTRUCTIONS.

. The defendant urges this court[1] to apply a de novo review to the WCJ’s findings; however, we’ find that the issues on review herein are subject to the manifest error rule.

., While the plaintiff did report to Dr. Gordon numbness in his left foot and weakness in his ' lower extremities, nowhere did he'previousfy report that his legs had given out on him or - that he was unable to ambulate.

. The parties herein stipulated to a TTD indemnity rate of $300.00 per week prior to trial.

. The defendant has not raised the WCJ’s award of all costs ássociated with the proceedings below as an assignment of error. Therefore, we do not ponsider this portion of the judgment,